UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
UNITED STATES OF AMERICA

                                                                                                  02-CR-743 (JMJ)

    - against -

JOHN MATERA, *et al.*

                **Defendants.**
----------------------------------------------------------x

**EMEREGENCY APPLICATION**

**MEMORANDUM OF LAW IN SUPPORT JOHN MATERA'S
MOTION FOR A REDUCTION OF SENTENCE, PURSUANT TO
18 U.S.C. § 3582, OR, IN THE ALTERNATIVE, TO VACATE
HIS SENTENCE PURSUANT TO 28 U.S.C. §§ 2241 AND 2255**.

                                                                                Seth Ginsberg
                                                                                Attorney at Law
                                                                                299 Broadway, Suite 1405
                                                                                New York, New York 10007
                                                                                917-885-3375
                                                                                srginsberg@mac.com

                                                                              *Attorney for John Matera*

**PRELIMINARY STATEMENT**

To avoid catastrophic consequences from his actual infection with COVID-19, John Matera, who has already served 90 percent of his sentence, submits this application for a reduction of his sentence to time served and immediate release from custody to home confinement. Alternatively, Matera seeks to have his sentence vacated, pursuant to 28 U.S.C. §§ 2241 and 2255, and the issuance of a temporary restraining order prohibiting his continued custody at FCI Danbury and ordering his release to home confinement pending the resolution of the instant application. Furthermore, Matera is amenable to any remedy that the Court may deem appropriate to provide Matera with the greatest chance of survival.

Matera is currently confined at FCI Danbury, which is one of the hardest hit facilities within the Bureau of Prisons ("BOP"). As of April 5, 2020, FCI Danbury reported COVID-19 infections in 21 inmates and seven staff members. Reports from inmates within the institution indicate that the conditions are insufficient to manage the present medical crisis, with effectively no ability for inmates to practice social distancing; a lack of staff due to infection and fear of infection, i.e., to avoid infection staff are not reporting for duty; a lack of responsiveness by staff to inmate concerns due to the staff's fear of infection from inmate contact; and a lack of available staff to manage the current crisis.

Currently, Matera suffers with high fever, chest pain, severe cough, loss of appetite, chills, and body aches. To bring the circumstances into sharper focus than the statistics and official statements of conditions afford, Matera's own words provide a chilling description of the general conditions and of his own suffering:

> It's so crazy here no one is here and these people are treating us like we did some thing wrong, the dr dont come to see us and people are sick << were on top of each other, the laundry is all screwed up, its a mess here.

Email for John Matera to Seth Ginsberg, Esq., dated April 1, 2020 at 10:34am.

> hey buddy and not to be crazy but im sick as a dog i have every sympton ,, its in here like crazy<< mt man i dont want to die<:) 21 years and a cold kills me, what a shmuck<< ok let me know,. no one is doing anything here cant even see no one dr are gone, they have social workers acting like dr<< and there treating us like we did some thing wrong< well seth, thank u for what ever u can do i know were in a battle and i know ill lose, i just hope to get out of here,, one day<< ok thank u,, my fever is burning up,, head is pounding, back is killing me tired like i been up for weeks

Email for John Matera to Seth Ginsberg, Esq., dated April 1, 2020 at 1:35pm.

Notably, the above statements were made prior to his diagnosis with COVID-19. Since his diagnosis with COVID-19, Matera has been isolated in the Special Housing Unit ("SHU"), which is typically utilized for punitive reasons. Thus, Matera suffers from a debilitating, painful, and frightening range of symptoms in an environment constructed for punitive rather than palliative purposes. Indeed, the psychological effects of isolation are well documented under normal circumstances. In the present circumstances, where Matera is battling a life-threatening infection, being deprived of virtually all human contact, both physical and otherwise, is a terrifying prospect. Accordingly, though perhaps the only available means to segregate him from the population of the facility, under the circumstances, allowing Matera to suffer alone in the SHU is nonetheless unconscionable.

Further, as a 49-year-old man with a longstanding history of hypertension and recent kidney infections that are reportedly unresolved, Matera is at increased risk of serious complications, including death, if he does not receive appropriate monitoring and treatment.

As set forth below, Matera has family with whom he can reside and remain appropriately isolated if released to home confinement. In addition, his family is prepared to have him transported safely and securely by ambulance from FCI Danbury to his residence in Staten Island, New York, where he can get the care and attention needed.

Under the circumstances, it is respectfully submitted that the grave risks posed by Matera's health and prognosis if he remains in BOP custody warrant his immediate release to home confinement to provide him with the greatest chance of survival without serious long term damage to his health and welfare.

Accordingly, for the reasons discussed more fully below, it is respectfully requested that the Court reduce Matera's sentence to time served and order his immediate release to home confinement. To avoid repetition, additional relevant facts are set forth in the ARGUMENT section below.

## ARGUMENT

**A. The Court Should Reduce Matera's Sentence to Time Served and Order His Immediate Release from Custody.**

For the reasons discussed below, given that Matera has tested positive for COVID-19 and has an underlying health condition that puts him at greater than average risk of serious complication, including death, the Court should reduce Matera's sentence to time served and order his immediate release from custody.

**1. Extraordinary and Compelling Circumstances Justify Reducing Matera's Sentence to Time Served.**

Matera's infection with COVID-19 amidst the rampant spread of the disease within FCI Danbury and the inability of the BOP to provide adequate medical attention to Matera constitute extraordinary and compelling circumstances.

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the Court is empowered to reduce an inmate's sentence when "extraordinary and compelling reasons warrant such a reduction." *Id*. Recent amendments to the statute have broadened a court's power to reduce an inmate's sentence, even absent a motion for reduction by the Bureau of Prisons:

3

As amended by the First Step Act, 18 U.S.C. § 3582 (c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), [a defendant] must both meet the exhaustion requirement and demonstrate that "extraordinary and compelling reasons" warrant a reduction of his sentence. The Court addresses these requirements in turn.

*United States v. Perez*, 2020 U.S. Dist. LEXIS 57265, *4 (S.D.N.Y. April 1, 2020) (granting application for compassionate release under 18 U.S.C. § 3582(c)(1)(A)).

As a general matter, given the rapidly expanding health crisis brought on by the COVID-19 pandemic, extraordinary and compelling circumstances exist. In *United States v. Jepsen*, 2020 U.S. Dist. LEXIS 57007 (D. Ct. April 1, 2020), the court noted the reality of these circumstances as follows:

> On March 13, 2020, the President of the United States declared a national state of emergency to slow the infectivity rate and treat those affected by a novel coronavirus known as SARS-CoV 2 ("COVID-19"). *Presidential Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, Mar. 13, 2020. COVID-19 is an emerging, rapidly evolving public health crisis. In response to public health officials' warnings about the infectivity of the virus and the risk of severe complications, dramatic and widespread "social distancing" measures have been imposed by all levels of government and branches nationwide.

*Jepsen*, 2020 U.S. Dist. LEXIS 57007, *7-8.

Further evidencing the broad acknowledgment that extraordinary and compelling circumstances exist, Attorney General William Barr has issued two memoranda directing the BOP to release prisoners who are grave risk from COVID-19 infection. Memorandum from the Attorney General to the Director of the Bureau of Prisons, regarding "Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic," dated March 26, 2020 (the 3/26/20 Barr Memo"); Memorandum from the Attorney General to the Director of the Bureau of Prisons, regarding "Increasing Use of Home Confinement at Institutions Most Affected by COVID-19," dated April 3, 2020 (the 4/3/20 Barr Memo") (collectively the "Barr Memos").

Moreover, apart from the extraordinary and compelling circumstances that exist generally, Matera's circumstances in specific are extraordinary and compelling in that (a) FCI Danbury, where Matera is incarcerated, is one of a few institutions that the Attorney General specifically identified as being "most affected by COVID-19." 4/3/20 Barr Memo. As of April 5, 2020, based on the information that the BOP reported on its website, which is updated at 3pm daily, FCI Danbury reportedly has 21 inmates who tested positive for COVID-19. https://www.bop.gov/coronavirus/. The number of infections is likely far greater, however, due to the relative lack of testing[1] and the inability of inmates to exercise social distancing effectively.

---

[1] *See, e.g.*, "NYC Federal Lockups, in Court-Mandated Report, Said Only 12 Inmates Have Gotten COVID Tests," New York Law Journal, April 3, 2020 (reporting on tests at MCC-NY and MDC-Brooklyn) https://www.law.com/newyorklawjournal/2020/04/03/nyc-federal-lockups-in-court-mandated-report-said-only-12-inmates-have-gotten-covid-tests/?kw=NYC%20Federal%20Lockups%2C%20in%20Court-Mandated%20Report%2C%20Said%20Only%2012%20Inmates%20Have%20Gotten%20COVID%20Tests&utm_source=email&utm_medium=enl&utm_campaign=dailynews&utm_content=20200406&utm_term=nylj

Furthermore, Matera has tested positive for COVID-19 and is at an increased risk of serious complications, including death, based on his underlying history of hypertension, as well as a recent kidney infection that reportedly has not fully resolved.

Indeed, recent guidance from the American Heart Association instructs that individuals with hypertension are at an increased risk of death from COVID-19:

> The AHA guidance, titled "What people with high blood pressure need to know about COVID-19," notes that individuals with raised blood pressure may face an increased risk for severe complications if they are infected with the virus. Data from the outbreak in Wuhan, China, shows a 10.5% death rate among people with COVID-19 who also have cardiovascular disease . . . 6% for those with high blood pressure, and 5.6% for those with cancer.

"COVID-19: AHA Guidance on Hypertension, Latest on Angiotensin Link," Medscape (April 5, 2020) https://www.medscape.com/viewarticle/927952.

The AHA's guidance accords with statistics from the outbreak in Italy, which indicate that 76% of the people who died in Italy from COVID-19 had hypertension. "Coronavirus and High Blood Pressure: What's the Link?" https://www.webmd.com/lung/coronavirus-high-blood-pressure#1.

In addition, as a 49-year-old male, Matera is at an increased risk of serious complications, including death, from the COVID-19 infection. Statistics indicate that males are suffering more severe levels of infection, higher rates of hospitalization, and greater need for intubation than females. *See, e.g.*, "Men Are Getting Sicker, Dying More Often of COVID-19, Spain Data Shows," Washington Post, March 26, 2020.[2] The data from Italy is similar, showing a mortality

---

[2] https://www.washingtonpost.com/health/2020/03/26/men-are-getting-sicker-dying-more-often-covid-19-spain-data-shows/

rate for men double that of women. "COVID-19 Mortality Twice as High for Men in Italy as Women," ABC News, March 20, 2020.[3]

Moreover, Matera's recent, unresolved kidney infection also places him at greater risk of serious complications from his infection with COVID-19. The Centers for Disease Control and Prevention ("CDC") identify individuals with chronic kidney disease as among those who are most vulnerable. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

Matera's current symptoms further evidence the gravity of his condition. As a result of the COVID-19 infection, Matera is suffering from high fever, difficulty breathing, chest pain, severe cough, loss of appetite, body aches, and difficulty sleeping. In light of the known progression of this infection, combined with Matera's underlying health issues, there appears to be a significant likelihood of serious complications in the near future if appropriate action is not taken immediately.

Furthermore, the risk of serious complications to those infected with COVID-19 are greatly increased for individuals who are incarcerated:

> The nature of detention facilities makes exposure and spread of the virus particularly harmful. Jaimie Meyer M.D., M.S., who has worked extensively on infectious diseases treatment and prevention in the context of jails and prisons, recently submitted a declaration in this district noting that **the risk of COVID-19 to people held in New York-area detention centers** . . . "**is significantly higher** than in the community, both **in terms of** risk of transmission, exposure, and **harm to individuals who become infected**." Meyer Decl. ¶ 7, *Velesaca v. Wolf*, 20 Civ. 1803 (S.D.N.Y. Feb. 28, 2020), ECF No. 42.

*Basank v. Decker*, 2020 US Dist. LEXIS 53191 (S.D.N.Y. Mar. 26, 2020).

---

[3] https://abcnews.go.com/Health/covid-19-mortality-high-men-italy-women/story?id=69717021

In *United States v. Hernandez*, 2020 U.S. Dist. LEXIS 58739 (S.D.N.Y. April 1, 2020) (granting compassionate release based upon danger posed by COVID-19 pandemic), the court discussed the widespread acknowledgement among numerous courts that the COVID-19 pandemic presents extraordinary and compelling circumstances warranting the release of inmates from custody in a variety of circumstances.[4]

Accordingly, it is respectfully submitted that extraordinary and compelling circumstances exist warranting the exercise of the Court's authority to reduce Matera's sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

---

[4] "*United States v. Chandler*, No. 19 Cr. 867 (PAC), 2020 U.S. Dist. LEXIS 56240, 2020 WL 1528120, at *1-3 (S.D.N.Y. Mar. 31, 2020) (granting bail application, pursuant to 18 U.S.C. § 3142(i), of defendant charged with being a felon in possession of a firearm); *United States v. McKenzie*, No. 18 Cr. 834 (PAE), 2020 U.S. Dist. LEXIS 55503, 2020 WL 1503669, at *2-3 (S.D.N.Y. Mar. 30, 2020) (granting bond pending sentencing, pursuant to 18 U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly weapon and had previously been released on bond); *United States v. Hernandez*, No. 19 Cr. 169 (VM), 2020 U.S. Dist. LEXIS 56506, 2020 WL 1503106, at *1 (S.D.N.Y. Mar. 30, 2020) (granting bail application, pursuant to § 3142(i), of 64-year-old defendant with asthma and high blood pressure that placed him "at a substantially heightened risk of dangerous complications should he contract COVID-19"); *United States v. Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2-3 (S.D.N.Y. Mar. 26, 2020) (granting bond pending sentencing, pursuant to § 3145(c), to defendant who had pleaded to a narcotics offense); *United States v. Perez*, No. 19 Cr. 297 (PAE), 2020 U.S. Dist. LEXIS 47515, 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (granting bail application, pursuant to § 3142(i), of 65-year-old defendant with COPD, in light of "unique confluence of serious health issues and other risk factors facing this defendant, . . . which place him at a substantially heightened risk of dangerous complications should [he] contract COVID-19"); *cf. United States v. Stephens*, No. 15 Cr. 95, ___ F. Supp. 3d ___, 2020 U.S. Dist. LEXIS 47846, 2020 WL 1295155 (AJN), at *3 (S.D.N.Y. Mar. 19, 2020) (granting defendant's request for reconsideration of bail conditions and releasing him to home confinement, while noting that, in the alternative, § 3142(i) would necessitate his temporary release)." *Hernandez*, 2020 U.S. Dist. LEXIS 58739, *8-10.

### 2. The Court Should Deem Matera to Have Exhausted Available Administrative Remedies or Waive the Requirement that He Do So.

In order to prevent a catastrophic outcome and in light of the extraordinary and compelling circumstances present, the Court should find that Matera has effectively exhausted the available administrative remedies or waive the requirement that he do so.

As noted above, under the First Step Act, 18 U.S.C. § 3582 (c)(1)(A) authorizes courts to modify terms of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." *Id*.

As the Court held in *Perez*, 2020 U.S. Dist. LEXIS 57265, however, there are circumstances where exhaustion of administrative remedies may be excused:

> "Even where exhaustion is seemingly mandated by statute . . . , the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019) (citing *McCarthy v. Madigan*, 503 U.S. 140, 146-47, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992)). There are three circumstances where failure to exhaust may be excused. "First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue." *Id*. Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief." *Id.* at 119. Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." *Id.*

*Perez*, 2020 U.S. Dist. LEXIS 57265,*4 (waiving exhaustion requirement and granting application for compassionate release under 18 U.S.C. § 3582(c)(1)(A)).

For the same reasons found in *Perez*, "[a]ll three of these exceptions apply here," *id.*:

> [U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile. Moreover, the relief the agency might provide could, because of undue delay, become inadequate. Finally, and obviously, [Matera] could be unduly prejudiced by such delay." *Washington*, 925 F.3d at 120-21; *see also Bowen v. City*

9

>of New York*, 476 U.S. 467, 483, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986) (holding that irreparable injury justifying the waiver of exhaustion requirements exists where "the ordeal of having to go through the administrative process may trigger a severe medical setback" (internal quotation marks, citation, and alterations omitted)); *Abbey v. Sullivan*, 978 F.2d 37, 46 (2d Cir. 1992) ("[I]f the delay attending exhaustion would subject claimants to deteriorating health, . . . then waiver may be appropriate."); *New York v. Sullivan*, 906 F.2d 910, 918 (2d Cir. 1990) (holding that waiver was appropriate where "enforcement of the exhaustion requirement would cause the claimants irreparable injury" by risking "deteriorating health, and possibly even . . . death").

*Perez*, 2020 U.S. Dist. LEXIS 57265,*4; *see also United States v. Colvin*, 2020 U.S. Dist. LEXIS 257962, *4-5 (D. Ct. April 2, 2020).

Accordingly, noting that "'[t]he ultimate decision of whether to waive exhaustion . . . should also be guided by the policies underlying the exhaustion requirement,'" and finding that "even a few weeks' delay carries the risk of catastrophic health consequences," the court in *Perez* concluded that requiring the defendant "to exhaust administrative remedies, given his unique circumstances and the exigency of a rapidly advancing pandemic, would result in undue prejudice and render exhaustion of the full BOP administrative process both futile and inadequate." *Perez*, 2020 U.S. Dist. LEXIS 57265, *4 (quoting *Bowen v. New York*, 476 U.S. 467, 484).

Here, too, it would be futile to require Matera to pursue administrative remedies any further and would likely result in grave injury. On April 4, 2020, via counsel, Matera applied to the Warden of FCI Danbury seeking Matera's release pursuant to the authority granted in the Barr Memos or, alternatively, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Exhibit A, Letter from Seth Ginsberg, Esq. to Warden, FCI Danbury, dated April 4, 2020.[5]

---

[5] The Exhibits referenced herein are attached to the accompanying declaration of Seth Ginsberg, Esq., dated April 6, 2020.

On April 6, 2020, FCI Danbury responded as follows:

The Bureau of Prisons (BOP) is carefully monitoring the spread of the COVID-19 virus. As with any type of emergency situation, we carefully assess how to best ensure the safety of staff, inmates and the public. FCI Danbury is implementing the Bureau of Prisons' guidance on mitigating the spread of COVID-19. That guidance can be found at www.bop.gov. The current plan continues to allow for inmate transfer to pre-release custody. As they near their release, all inmates are reviewed on an individual basis to determine their eligibility for a period of pre-release confinement, including placement on home confinement. Please note with one exception for elderly offenders, home confinement eligibility is limited to 6 months or 10% of an inmate's sentence, whichever is shorter.

We are in receipt of Attorney General Barr's memo regarding Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic, and will be working to ensure we utilize home confinement, consistent with the memo, to protect the health and safety of BOP staff and inmates in our custody.

Exhibit B, Email from Executive Assistant, Federal Correctional Institution Danbury CT, to Seth Ginsberg, Esq., dated April 6, 2020.

Taking into account the likelihood that FCI Danbury is being overwhelmed with both the need to care for infected inmates; the need to protect uninfected inmates; and the need to process what likely amounts to an exceptionally large number of applications for release, the response to Matera's application is insufficient to protect Matera's interests under the present circumstances, particularly given that it not only fails to take into account the authority granted under the 4/3/20 Barr Memo but also fails to provide any timeframe within which FCI Danbury will consider Matera's application.

Accordingly, in light of all of the circumstances, including Matera's infection with COVID-19; his increased risk of serious complications, including death, due to his underlying heath conditions, age, and sex; and the high rate of infection at FCI Danbury and the corresponding lack of resources to manage infected inmates, it is respectfully submitted that the

11

Court should find that Matera has exhausted his administrative remedies or waive the requirement that he do so.

### 3. The Factors Under 18 U.S.C. § 3553(a) Warrant a Reduction in Matera's Sentence, Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

Under the circumstances present, the factors under 18 U.S.C. § 3553(a) favor a reduction of Matera's sentence to time served and immediate release to home confinement.

Though Matera is convicted of serious offenses involving violations of the RICO laws in two separate indictments for which he was sentenced to a total of 337 months imprisonment, he has served approximately 90 percent of his sentence and is currently scheduled for release on June 8, 2023, without any consideration for time in a community confinement center prior to his official release date. Thus, notwithstanding the seriousness of the offense, the fact that Matera has served a substantial portion of his entire, lengthy sentence favors release.

Moreover, Matera is confined in a low security institution, which, though not controlling here, Attorney General Barr indicated is a factor that the BOP should consider in determining which inmates to release in response to the pandemic. 3/26/20 Barr Memo. Similarly, Matera does not have a history of violence or gang-related activity while incarcerated and has no recent disciplinary violations. *Id*. In addition, Matera has completed numerous rehabilitative programs during his incarceration, including the yearlong Resolve program, which he reportedly recently finished.

Critically, § 3553(a) instructs that the sentence imposed should "provide the defendant with needed . . . medical care . . . in the most effective manner." *Id*. Isolation in the SHU is certainly not the most effective manner in which to provide Matera with the medical care that he requires in the present circumstances. If released to home confinement, however, his family is

12

equipped to provide the necessary environment to facilitate his recovery and to protect others from the spread of the infection.

Matera has a verifiable re-entry plan, as he is able to move by ambulance to the home of his fiancée, Jennifer Revere, in Staten Island, New York, where he will be appropriately isolated during his period of infection, while continuing to receive appropriate medical attention and be transferred to hospital care if medically necessary. Matera's family is prepared to have him transported safely and securely via ambulance from FCI Danbury to Staten Island so as to ensure both his wellbeing and to prevent the spread of the infection to any third party.

Accordingly, for all of the reasons discussed above, it is respectfully submitted that the factors under 18 U.S.C. § 3553(a) favor reducing Matera's sentence to time served and releasing him to home confinement.

**B. Alternatively, the Court Should Vacate Matera's Sentence Under 28 U.S.C. §§ 2241 and 2255 and Issue a Temporary Restraining Order Prohibiting Matera's Continued Confinement During the Resolution of the Instant Application.**[6]

The Court should find that constitutional violations warrant vacating Matera's sentence, pursuant to 28 U.S.C. §§ 2241 and 2255. Furthermore, in order to prevent irreparable harm, the Court should issue a temporary restraining order prohibiting Matera's continued confinement at FCI Danbury and ordering his release to home confinement during the pendency of the instant application.

The court has recently found that § 2241 is an appropriate procedural mechanism under the present circumstances:

> An application for **habeas corpus under 28 U.S.C. § 2241 is the appropriate vehicle for an inmate in federal custody to challenge conditions or actions that pose a threat to his medical wellbeing.** *See Roba v. United States*, 604 F.2d 215, 218-19 (2d Cir.

---

[6] Given the emergency nature of the instant application, it is respectfully requested that the Court waive the formal filing requirements for the relief sought in this section.

13

> 1979) (allowing a § 2241 application to challenge an inmate's "transfer while seriously ill" where that transfer posed a risk of fatal heart failure).

*Basank v. Decker*, 2020 US Dist. LEXIS 53191 (S.D.N.Y. Mar. 26, 2020).

In *Basank*, the court noted that the Supreme Court has recognized that risk and needless suffering from a serious communicable disease can give rise to a constitutional remedy:

> The Supreme Court has recognized that government authorities may be deemed "deliberately indifferent to an inmate's current health problems" where authorities "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year," including "exposure of inmates to a serious, communicable disease," even when "the complaining inmate shows no serious current symptoms." *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993).

*Basank*, 2020 US Dist. LEXIS 53191.

The court further found that "showing that the conditions of confinement pose an unreasonable risk of serious damage to their future health" is sufficient. *Basank*, 2020 U.S. Dist. LEXIS 53191 (quoting *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002)). In that regard, the court found that the risk of harm to infected individuals who are incarcerated is far greater than to those in the general community. *Basank*, 2020 US Dist. LEXIS 53191.

In light of the circumstances in the instant case, it is respectfully submitted that the conditions of Matera's confinement in the SHU while he suffers from COVID-19 amount to a violation of Eighth Amendment proscriptions against cruel and inhuman punishment, as well as a violation of Matera's due process rights. Accordingly, Matera requests that the Court vacate his sentence to cure these constitutional violations.

Moreover, given the likelihood that Matera will succeed on the merits of this application, the need to avoid irreparable harm if relief is not granted promptly, and a balancing of the equities, it is respectfully submitted that the Court should issue a temporary restraining order

prohibiting the continued confinement of Matera at FCI Danbury and ordering his immediate release to home confinement.

## CONCLUSION

Based upon the foregoing, it is respectfully requested that the Court reduce Matera's sentence and order his immediate release to home confinement, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Alternatively, it is requested that the Court vacate Matera's sentence, pursuant to 28 U.S.C. §§ 2241 and 2255, and issue a temporary restraining order prohibiting Matera's incarceration at FCI Danbury and ordering his release to home confinement pending the outcome of the instant application.

Further, Matera is amenable to any alternative remedy that the Court may fashion to provide him the greatest possible chance of survival.

Dated: New York, New York
April 6, 2020

Respectfully submitted,

s/_____
Seth Ginsberg
Attorney at Law
299 Broadway, Suite 1405
New York, New York 10007
917-885-3375
srginsberg@mac.com

*Attorney for John Matera*

15